No. 22-13293

In the

# United States Court of Appeals

For the

# Eleventh Circuit

———————————

John Doe,

*Plaintiff/Appellant*

vs.

Emory University

*Defendant/Appellee*

———————

On Appeal from the United States District Court
Northern District of Georgia

———————

**RESPONSE BRIEF OF DEFENDANT-APPELLEE EMORY UNIVERSITY**

———————————

Joshua I. Bosin
John M. Hamrick
MacKenzie E. Gansert
Nicholas R. Boyd
HOLLAND & KNIGHT LLP
1180 West Peachtree Street, Suite 1800
Atlanta, Georgia  30309
Telephone:  (404) 817-8500
Facsimile:  (404) 881-0470
E-Mail:  joshua.bosin@hklaw.com
E-Mail:  john.hamrick@hklaw.com
E-Mail:  mackenzie.gansert@hklaw.com
E-Mail:  nicholas.boyd@hklaw.com

*Counsel for Defendant-Appellee Emory University*

Appeal No. 22-13293 (*Doe v. Emory University*)

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellee hereby certify that the following persons or entities have or may have an interest in this case:

1.     Bernstein, Stuart, Counsel for Plaintiff-Appellant

2.     Bosin, Joshua I., Counsel for Defendant-Appellee

3.     Boyd, Nicholas R., Counsel for Defendant-Appellee

4.     Coffman, Andrew Y., Counsel for Plaintiff-Appellant

5.     Hon. Cohen, Mark H., United States District Court Judge for the
       Northern District of Georgia

6.     Doe, John, Plaintiff-Appellant

7.     Emory University, Defendant-Appellee

8.     Gansert, MacKenzie E., Counsel for Defendant-Appellee

9.     Hamrick, John M., Counsel for Defendant-Appellee

10.    Holland & Knight, LLP, Counsel for Defendant-Appellee

11.    Levy, Adrienne, Counsel for Plaintiff-Appellant

12.    Lewis, Nicholas E., Former Counsel for Plaintiff-Appellant

13.    Miltenberg, Andrew T., Counsel for Plaintiff-Appellant

14.    Nesenoff & Miltenberg, LLP, Counsel for Plaintiff-Appellant

15.    Park Chesin & Walbert, PC., Counsel for Plaintiff-Appellant

Appeal No. 22-13293 (*Doe v. Emory University*)

This 31st day of March, 2023.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

s/ Joshua I. Bosin
Joshua I. Bosin
John M. Hamrick
MacKenzie E. Gansert
Nicholas R. Boyd

Regions Plaza, Suite 1800
1180 West Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 817-8500
Facsimile:  (404) 881-0470
E-Mail:  joshua.bosin@hklaw.com
E-Mail:  john.hamrick@hklaw.com
E-Mail:  mackenzie.gansert@hklaw.com
E-Mail:  nicholas.boyd@hklaw.com

Counsel for Defendant-Appellee
Emory University

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee Emory University ("Emory" or the "University") submits that oral argument is not necessary for purposes of this appeal. This action principally involves the straightforward application of federal pleading rules to claims brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), a subject that this Court comprehensively addressed last year. *See Doe v. Samford Univ.*, 29 F.4th 675, 680-81 (11th Cir. 2022). This case also concerns the application of well-settled Georgia law concerning contract formation and long-established Eleventh Circuit rules regarding a plaintiff's presentation of a proposed amended complaint, neither of which requires oral argument.

Should this Court nevertheless elect to hear oral argument, Emory requests to be heard.

## **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE AND FACTS ...........................................3

   I.  Statement of the Case. ................................................................3

   II.  Factual Allegations. ..................................................................5

      A. Emory's Title IX Investigation and Hearing Concerning Roe's
      Allegations......................................................................5

      B. Doe's Generalized Allegations About Government Policies and
      University Programming ...............................................10

      C. Doe's Failure to Allege Mutual Assent To Emory's Sexual Misconduct
      Policy ..............................................................................12

   III. Procedural History..................................................................13

   IV. Standard of Review .................................................................14

SUMMARY OF THE ARGUMENT .......................................................14

ARGUMENT .........................................................................................18

   I.  The District Court Correctly Held that Doe Failed to State a Claim Under
Title IX.......................................................................................18

      A. *Samford* provides the appropriate framework for applying federal
      pleading standards to Title IX claims.............................18

      B. The District Court Correctly Applied *Samford* in Dismissing Doe's Title
      IX Claim .........................................................................20

      C. Doe's Allegations Do Not Give Rise to a Reasonable Inference of Gender
      Discrimination ................................................................23

II.  The District Court Did Not Err in Dismissing Doe's Claims for Breach of Contract..........................................................................................................37

    A. The District Court Correctly Dismissed Doe's Claims for Breach of Contract Because Doe Failed to Allege Mutual Assent to the SMP........37

    B. The Dismissal of Doe's Contract Claims Should Also Be Affirmed Because Emory Could Modify the SMP at Will......................................46

    C. The District Court's Dismissal of Doe's Claim for "Intentional and Knowing Breach of Contract" Should Be Affirmed on the Alternative Ground that This Is Not a Separate Cause of Action ...............................48

III. The District Court Did Not Err in Dismissing Doe's Complaint with Prejudice...............................................................................................................49

CONCLUSION....................................................................................................55

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 14, 19

*U.S. ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ............................................................... 53

*Bazemore v. Jefferson Capital Sys., LLC*,
    827 F.3d 1325 (11th Cir. 2016) ............................................................... 38

*BDI Laguna Holdings v. Marsh*,
    301 Ga. App. 656 (2009) ........................................................................ 16, 37

*BE & K Const. Co. v. N.L.R.B.*,
    133 F.3d 1372 (11th Cir. 1997) ............................................................... 35

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... 15, 19, 35

*Bishop v. Shorter Univ., Inc.*,
    No. 4:15-cv-0033-HLM, 2015 WL 13753710 (N.D. Ga. June 4,
    2015) ...................................................................................................... 40, 41

*Blue Ridge Mountain Fisheries, Inc. v. Dep't of Nat. Res.*,
    217 Ga. App. 89 (1995) ........................................................................... 49

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ............................................................... 53

*Cita Tr. Co. AG v. Fifth Third Bank*,
    879 F.3d 1151 (11th Cir. 2018) .................................................. 14, 50, 51, 53, 55

*Cox v. Nobles*,
    15 F.4th 1350 (11th Cir. 2021) ............................................................... 46

*Davidson v. Maraj*,
    609 F. App'x 994 (11th Cir. 2015) ........................................................ 18, 50, 53

*Doe v. Amherst Coll.*,
    238 F. Supp. 3d 195 (D. Mass. 2017) .................................................... 26

iv

*Doe v. Baum*,
    903 F.3d 575 (6th Cir. 2018) ...............................................................31

*Doe v. Columbia Coll., Chi.*,
    933 F.3d 849 (7th Cir. 2019) ........................................15, 29, 31, 35

*Doe v. Emory Univ., Inc.*,
    No. 1:21-cv-4859-TWT, 2022 WL 17419555 (N.D. Ga. Dec. 5,
    2022) ....................................................................................45, 46

*Doe v. Emory Univ.*,
    No. 1:20-cv-2002-TWT, 2021 WL 358391 (N.D. Ga. Jan. 22,
    2021) .............................................................39, 40, 41, 45

*Doe v. Lynn Univ., Inc.*,
    235 F. Supp. 3d 1336 (S.D. Fla. 2017) ...........................................27

*Doe v. Oberlin Coll.*,
    963 F.3d 580 (6th Cir. 2020) ................................................15, 22, 28

*Doe v. Purdue Univ.*,
    928 F.3d 652 (6th Cir. 2019) .......................................................33, 34

*Doe v. Rollins Coll.*,
    352 F. Supp. 3d 1205 (M.D. Fla. 2019)........................................27, 46

*Doe v. Samford Univ.*,
    29 F.4th 675 (11th Cir. 2022) ....................................................*passim*

*Doe v. Univ. of Arkansas–Fayetteville*,
    974 F.3d 858 (8th Cir. 2020) ........................................24, 25, 26, 28

*Doe v. University of the Sciences*,
    961 F.3d 203 (3d Cir. 2020) .............................................................26

*Doe v. Washington & Lee Univ.*,
    No. 6:14-cv-0052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015)...........33, 34, 38

*Donaldson v. Olympic Health Spa, Inc.*,
    175 Ga. App. 258 (1985) ...........................................................17, 38

*Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*,
    344 F.3d 1288 (11th Cir. 2003) .........................................................52

v

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.*,
    132 F.3d 1359 (11th Cir. 1998) .......................................................... 44

*Grange Mut. Cas. Co. v. Woodard*,
    300 Ga. 848 (2017) ............................................................................ 17

*Kalpakchian v. Bank of Am. Corp.*,
    832 F. App'x 579 (11th Cir. 2020) .................................................... 54

*Kuritzky v. Emory Univ.*,
    294 Ga. App. 370 (2008) ................................................................... 43

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008) ......................................................... 47

*Long v. Satz*,
    181 F.3d 1275 (11th Cir. 1999) .................................................... 50, 54

*Luke v. Gulley*,
    975 F.3d 1140 (11th Cir. 2020) ......................................................... 47

*Malivuk v. Ameripark, LLC*,
    694 F. App'x 705 (11th Cir. 2017) .................................................... 53

*Manago v. D.C.*,
    934 A.2d 925 (D.C. 2007) ................................................................. 43

*Mathews v. Clark Atlanta Univ., Inc.*,
    No. 1:17-cv-2963-MLB, 2023 WL 2229670, (N.D. Ga. Jan. 13,
    2023) .................................................................................................. 41

*Millien v. Colby Coll.*,
    874 A.2d 397 (Me. 2005)................................................................... 48

*Morehouse Coll., Inc. v. McGaha*,
    277 Ga. App. 529 (2005) ............................................................. 43, 46

*Moreno v. Smith*,
    299 Ga. 443 (2016) ............................................................................ 37

*Moses v. Auto-Owners Ins. Co.*,
    No. 1:19-cv-00032 (M.D. Ga. Dec. 2, 2020), Doc. 25 ................. 17, 49

*Municipal Electric Authority of Georgia v. City of Calhoun*,
227 Ga. App. 571 (1997) ...............................................................17, 47

*Norris v. Univ. of Colorado, Boulder*,
362 F. Supp. 3d 1001 (D. Colo. 2019)................................................27

*Nungesser v. Columbia Univ.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016) ................................................39

*Perlman v. Bank of Am., N.A.*,
561 F. App'x 810 (11th Cir. 2014) .....................................................53

*Pinder v. John Marshall Law School*,
11 F. Supp. 3d 1208, 1266 (N.D. Ga. 2014).......................................45

*Posner v. Essex Ins. Co., Ltd.*,
178 F.3d 1209 (11th Cir. 1999) (per curiam) .............................*passim*

*Rivas v. The Bank of New York Mellon*,
676 F. App'x 926 (11th Cir. 2017)......................................................54

*Rosenberg v. Gould*,
554 F.3d 962 (11th Cir. 2009) ............................................................50

*Rossi v. University of Utah*,
496 P.3d 105 (Utah 2020)...................................................................42

*Shaw v. Elon University*,
400 F. Supp. 3d 360 (M.D.N.C. 2019) ...............................................43

*Simmons v. McBride*,
228 Ga. App. 752 (1997) ...................................................................37

*Smith v. Healthcare Auth. for Baptist Health*,
2:22-cv-887-MHT, 2022 WL 857036 (M.D. Ala. Mar. 22, 2022)....................20

*Thomas v. Farmville Mfg. Co.*,
705 F.2d 1307 (11th Cir. 1983) ..........................................................54

*Thomas v. Town of Davie*,
847 F.2d 771 (11th Cir. 1988) ............................................................54

*Tims v. LGE Cmty. Credit Union*,
   935 F.3d 1228 (11th Cir. 2019) ............................................................37

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
   314 F.3d 541 (11th Cir. 2002) (en banc) ....................................50, 51, 52, 53, 54

*Williams v. Corporation of Mercer University*,
   542 F. Supp. 3d 1366 (M.D. Ga. 2021) ......................................................44, 45

*Woldeab v. Dekalb County Board of Education*,
   885 F.3d 1289 (11th Cir. 2018) ...........................................................54

**Statutes**

Title IX of the Education Amendments Act of 1972,
   20 U.S.C. §§ 1681 *et seq.* ............................................................*passim*

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1367 ....................................................................................1

O.C.G.A. § 13-3-1..................................................................................37

O.C.G.A. § 51-12-10..............................................................................49

## <u>STATEMENT OF JURISDICTION</u>

The district court maintained federal question jurisdiction over Appellant John Doe's ("Doe") Title IX claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Doe's state law claims pursuant to 28 U.S.C. § 1367.

Following the district court's complete dismissal of Doe's Complaint with prejudice on September 1, 2022 and Doe's filing of a Notice of Appeal on September 28, 2022, this Court now has jurisdiction pursuant to 28 U.S.C. § 1291. [*See* DE#25-27.][1]

---

[1]    Citations to the district court record are in the following form: [DE#[docket number]:[CM/ECF page number].]

## <u>STATEMENT OF THE ISSUES</u>

1.      Whether the district court correctly granted Emory's motion to dismiss Doe's Title IX claims where Doe failed to allege facts giving rise to a reasonable inference that the University discriminated against Doe on the basis of sex.

2.      Whether the district court correctly granted Emory's motion to dismiss Doe's claims for breach of contract on the basis that Doe did not adequately allege his assent to or awareness of Emory's Sexual Misconduct Policy, awareness of its terms, or any affirmative conduct on the part of Doe to indicate such assent.

3.      Whether the district court abused its discretion by dismissing Doe's Complaint with prejudice where Doe never moved to amend his operative pleading, made only a passing request to amend in his opposition to Emory's Motion to Dismiss, and never set forth the substance of any proposed amendment.

## STATEMENT OF THE CASE AND FACTS

I.    **Statement of the Case.**

This case is about Emory's full and fair adjudication of an undergraduate student's Title IX complaint. Unhappy with the outcome of the University's process, Doe now seeks to relitigate Emory's Title IX investigation and Doe's resulting disciplinary suspension.

The outcome of this action is controlled by this Court's decision in *Doe v. Samford University*, which held that to plead a facially-plausible claim of sex discrimination under Title IX, a plaintiff must allege facts giving rise to a reasonable inference that a university discriminated against him "on the basis of sex." *Samford*, 29 F.4th 675, 690 (11th Cir. 2022). Doe's Complaint did not meet the *Samford* pleading standard and instead asserted a hodge-podge of gender-neutral complaints that are insufficient to state a plausible claim of discrimination on the basis of Doe's sex. Accordingly, the district court properly dismissed Doe's Title IX claims with prejudice.

In 2019, Jane Roe ("Roe") reported to Emory's Department of Title IX that she had been sexually assaulted by Doe, a fellow student at the time. The University initiated an investigation into Roe's Title IX complaint in compliance with its Sexual Misconduct Policy ("SMP"). Emory ultimately conducted a hearing during which Doe and Roe had an opportunity to be heard and present evidence.

3

The hearing panel found the account provided by Roe and her witnesses more credible than the account provided by Doe and his witnesses and sanctioned Doe with a semester-long suspension. This finding was affirmed through Emory's appeal process. Thereafter, Doe filed suit.

The district court correctly dismissed Doe's Title IX claims with prejudice, holding that Doe failed to plausibly allege that he was discriminated against on the basis of sex. Doe's allegations of decades-old news stories about Emory's mishandling of an alleged sexual misconduct complaint, a rescinded Department of Education guidance letter, programming aimed at engaging men in preventing sexual assault, and another male student's allegations of bias simply did not give rise to a reasonable inference that Emory discriminated against Doe on the basis of sex. *See Samford*, 29 F.4th at 692.

The district court also correctly held that Doe failed to allege that the SMP, upon which Doe's breach of contract claims were based, formed part of a binding contract between Doe and Emory because his Complaint lacked allegations showing Doe's assent to its terms. The district court dismissed Doe's so-called claim for intentional and knowing breach of contract for the same reasons.

Lastly, the district court properly dismissed Doe's Complaint with prejudice. Doe neither moved to amend his Complaint, nor did he identify to the district court the substance of any proposed amendment. As such, the district court appropriately

exercised its discretion to dismiss Doe's Complaint with prejudice without affording Doe an opportunity to replead. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (per curiam). The district court's dismissal must be affirmed.

## II.    Factual Allegations.[2]

### A. Emory's Title IX Investigation and Hearing Concerning Roe's Allegations.

Doe's claims arise from Emory's determination that Doe engaged in a non-consensual sexual encounter with Roe at a "4/20" party at Doe's fraternity house on April 20, 2019. [DE#1:40-41 (¶ 130).] (April 20th, or "4/20," is a "known holiday for those who smoke cannabis." [*Id.* at 27 (¶ 83)].) Doe alleges that Emory reached this determination by engaging in sex discrimination against him through its Title IX procedures. [DE#1:32-42 (¶¶ 101-135).] According to Doe, the alleged sex discrimination can be inferred from what he avers is a history of discriminatory conduct on the part of Emory that was enhanced by pressures external to the University. [DE#1:5-25 (¶¶ 18-74).]

On November 6, 2019, Roe filed a complaint with Emory's Department of Title IX alleging nonconsensual sexual intercourse and nonconsensual sexual

---

[2]    Although Doe's well-pleaded factual allegations must be taken as true at this procedural stage, Emory does not concede the accuracy of Doe's allegations for any other purpose.

contact by Doe. [*Id.* at 32 (¶ 102).] Title IX Coordinator Judith Pannell notified Doe of the allegations the following day. [*Id.* (¶ 103).] Doe was initially interviewed on December 7, 2019. [*Id.* (¶ 104).] Doe complains that he did not receive Roe's initial statement prior to this interview and was unaware of "the exact allegations against him," which, he asserts, "deprived [him] of an opportunity to prepare an adequate defense." [*Id.* at 32-33 (¶ 104).]

Doe alleges that Roe stated in her January 24, 2020 interview that, during their sexual encounter, Doe choked Roe with her belt, locked the door, and looked out through a peephole in the door, all of which Doe denies. [*Id.* at 33-34 (¶¶ 105-07).] Doe complains that the investigator asked Roe leading questions, such as whether she was "withdrawing away" when Doe kissed her. [*Id.* at 34 (¶ 109).]

On April 30, 2020, Investigator Kristyne Seidenberg "took over the investigation." [*Id.* (¶ 111).] On May 11, 2020, Doe and Roe were separately interviewed by Seidenberg. [*Id.* at 35 (¶ 112).] Due to the COVID-19 pandemic, the parties and their witnesses subsequently received written questions. [*Id.* at 35 (¶ 113).] Doe alleges that Roe and her witnesses were asked about another complaint by Roe against another student, "JA," which stemmed "from nearly the same set of events" as those alleged by Roe against Doe, but Doe avers he was unable to obtain information about the questions pertaining to the JA complaint. [*Id.* at 35 (¶ 114).]

Doe further alleges that on June 2, 2020, Roe responded to other written questions and stated that during the alleged incident Doe knew Roe was intoxicated, although Roe recounted in a prior interview that she "did not feel intoxicated" and "was not incoherent." [*Id.* at 34, 36 (¶¶ 108, 115).] On September 8, 2020, Seidenberg submitted additional written questions to Roe, to which Roe responded that her pants and belt were on the floor during the complained of sexual encounter, although Roe previously stated that Doe choked Roe with her belt. [*Id.* at 36-37 (¶ 117).]

Seidenberg issued an investigative report on October 19, 2020. [*Id.* at 37 (¶ 118).] Doe complains the report included Roe's unsubstantiated statements that he was "the biggest stoner at Emory" and a lot of girls were "scared" of him. [*Id.* (¶ 118).] On November 4, 2020, Doe submitted a 25-page response to the report that, he claims, outlined "numerous factual inaccuracies within the complaint and pointed out the shifting stories that Roe had told in her interviews . . . ." [*Id.* at 37 (¶ 119).]

Emory's Title IX Coordinator for Students determined that the information contained in the investigative report supported charging Doe with violations of the University's SMP, and on November 12, 2020, the University issued a notice to Doe charging him with nonconsensual sexual intercourse and nonconsensual sexual contact. [*Id.* at 37-38 (¶ 120).] Doe complains that the notice did not

mention the specific allegations against Doe, although he admits he knew the allegations contained in the investigation report. [*Id.* at 37-39 (¶¶ 119-120).]

An Emory hearing board took up the matter on February 16, 2021. [*Id.* at 38 (¶ 123).] Over Doe's objection, the hearing was conducted pursuant to the version of Emory's SMP in place at the time Roe made her Title IX complaint (as opposed to the SMP in place at the time of the hearing). [*Id.* (¶ 121).]

Doe claims the hearing was subject to "female complainant favoritism." [*Id.* at 39 (¶ 124).] According to Doe, Roe had three advisors while he had fewer, Roe spoke directly to him during her opening while he could not speak directly to her, and Roe "received the lightest of trauma-informed questions from a warm panel" while he received a "more hostile and adversarial line of questions." [*Id.* 39-40 (¶¶ 124-28).] Doe further avers that the panel "failed to ask questions bearing negatively on Roe's credibility," [*id.* at 39 (¶ 126)], although Doe admits that Roe gave testimony about her allegedly inconsistent prior statements regarding her intoxication and Doe's supposed use of his belt. [*See id.* (¶ 125)].

Doe also alleges that the chair of the hearing board, Dr. Eley, "warmly" stated Roe would testify first and "changed his tone" when announcing Doe would testify as to "'what he thinks went on.'" [*Id.* at 40 (¶ 129).] Doe avers that Roe stated at the hearing that she was severely intoxicated on the day of the incident in question, Roe admitted that she had not told the investigator of the extent of her

intoxication, and Roe admitted that her statements regarding Doe choking her with his belt were "misleading." [*Id.* at 39 (¶ 125).]

On March 2, 2021, the hearing board issued a determination and rationale finding Doe responsible for nonconsensual sexual intercourse and nonconsensual sexual contact. [*Id.* at 40 (¶ 130).] Having heard the live testimony of Roe, Doe, and their witnesses, the hearing board concluded that Roe's account was more credible than Doe's, based in part on a determination that Doe had lied about not smoking marijuana at the "4/20" party. [*Id.* at 40-41 (¶¶ 130-31).] Doe admitted to smoking marijuana that morning and "at no time denied smoking marijuana occasionally in general." [(Id. at 27 (¶ 83).]

Doe complains that the hearing board's determination and rationale "lacked sufficient detail or reasoning" and that the hearing board should not have concluded that Roe was more credible than Doe. [*Id.* at 40 (¶ 130).] Doe also complains that "Roe's two female witnesses that testified that Roe was intoxicated were given more credibility than the three male witnesses called by Doe that testified that Roe was not intoxicated." [*Id.* at 41 (¶ 133).]

Doe appealed the hearing panel's determination, and an Emory appeals panel ultimately denied Doe's appeal. [*Id*. at 41-42 (¶¶ 134-35).]

**B. Doe's Generalized Allegations About Government Policies and University Programming.**

Doe's Complaint makes generalized allegations of outside pressure on Emory that Doe claims raise a reasonable inference that Emory's alleged mishandling of its Title IX investigation resulted from sex discrimination.

On April 4, 2011, the Department of Education's Office for Civil Rights ("OCR") issued a guidance letter that became known colloquially as the "Dear Colleague Letter." [DE#1:6 (¶ 18).] The letter ultimately was rescinded by OCR on September 22, 2017, years prior to Emory's investigation of Doe's alleged misconduct. [DE#1:15-16 (¶ 46).]

Nevertheless, Doe claims that the rescinded Dear Colleague Letter "pressured colleges and universities to aggressively pursue investigations of sexual assault on campus," [*id.* at 8 (¶ 25)], and that "[t]he threat of revocation of federal funds—the ultimate penalty—was a powerful tool in motivating colleges to aggressively pursue and punish male students accused of sexual misconduct." [DE#1:12 (¶ 37).] Doe also asserts that Emory continued "victim-centered practices and policies" after the rescission of the Dear Colleague Letter, which Doe claims constituted "gender biased enforcement of Title IX." [*Id.* at 18-19 (¶ 57).]

Doe further alleges that in 2014—seven years prior to Doe's Title IX hearing—Emory was identified "as one of the initial 55 universities under OCR investigation." [*Id.* at 11 (¶ 35).] Doe alleges in a conclusory manner that this

10

investigation created outside pressure on "colleges" to "pursue and punish male students accused of sexual misconduct." [*Id.* at 12 (¶ 37).] OCR's investigation eventually culminated in a resolution by which Emory's Title IX Coordinator was required to review responses to Title IX complaints submitted through May 31, 2019 (that is, six months before Roe submitted her Title IX complaint). [*Id.* at 12 (¶ 36).]

Doe also relies on a 1991 protest by Emory School of Law students who complained that Emory failed to act upon complaints by female students that they had been subject to unwelcome advances by a male professor. [*Id.* at 23 (¶ 68).] Doe further cites to a 2018 lawsuit in which the University was sued by a male student who alleged that Emory holds "biased assumptions that female students would not make false accusations of sexual assault against their fellow male students." [*Id.* at 24-25 (¶ 72).]

Doe additionally relies on Emory's "sexual assault awareness" programs as alleged support for his claim of sex discrimination. [*Id.* at 24 (¶ 70).] These included: RespectCon in 2013, which, according to one news article, included a focus on "engaging men in sexual violence prevention" [*id.* (¶ 70)]; RealConsent in 2014, which included a "sexual assault educational program 'for college males'" [*id.* (¶ 71)]; and RespectCon19 in 2019, which featured a discussion titled "Masculinity as a Failed Project" and a talk from an outside organization, Men

11

Stopping Violence, titled "Definition of Male Sexual Violence Against Women: Implications for Engaging Men on Campus." [*Id.* at 25 (¶ 73).]

### C. Doe's Failure to Allege Mutual Assent to Emory's Sexual Misconduct Policy.

Emory's SMP governs the University's Title IX procedures. [*Id.* at 42 (¶ 136).] Doe alleges that Emory updates and revises the SMP every year and that the SMP is available through the Emory website. [*Id.* at 42 (¶¶ 137-38).] Doe does not allege that he signed, consented to, or even knew of the SMP prior to Roe's Title IX complaint against him. Although Doe alleges his "compliance with the University's relevant policies," [*id.* at 57 (¶ 176)], he does not allege any acts suggesting such compliance. The SMP lists its revision history, which shows seventeen revisions between its creation in 2007 and February 2020. [DE#15-2:28.]

Doe alleges that by matriculation alone, Emory and Doe "became mutually bound" by the SMP. [*Id.* at 42 (¶ 136).] According to Doe, through the Title IX process, "[Emory] breached its contractual obligations and the implied covenant of good faith and fair dealing . . . ." [*Id.* at 43 (¶ 141).] Doe avers that Emory breached the SMP by "failing to provide a fair and impartial investigation," "fail[ing] to complete the investigation in a prompt and timely manner," "appointing Investigators and hearing officers that were clearly not trained properly," "fail[ing] to make any mention of incapacitation" in its November 7,

12

2019 Notice of Allegations, "failing to grant Doe fair and equal treatment during the hearing," "creat[ing] an environment which was clearly adversarial" during the hearing, and "fail[ing] to properly apply Policy definitions . . . ." [*Id.* at 43-47 (¶¶ 142-48).]

## III.  Procedural History.

Doe filed suit against Emory on July 9, 2021 and asserted counts for violations of Title IX, breach of contract, and intentional and knowing breach of contract. [DE#1 at 50-60 (¶¶ 157-188).] Emory moved to dismiss Doe's Complaint on the grounds that Doe failed to state a claim. [DE#15.] Because the Complaint could not be cured by amendment, Emory argued that dismissal should be with prejudice. [DE#15:1, 2; DE#15-1:3, 4-5, 26.]

In concluding his Response to Emory's Motion to Dismiss, Doe "request[ed]" that "[t]o the extent this court is inclined to dismiss any claims . . . such dismissal should be without prejudice, and Doe should be permitted to file a motion for leave to amend containing a proposed amended pleading." [DE#20:25; *see also id.* at 12 (making substantially similar request).] But Doe's Response did not attach a proposed amended complaint or otherwise reveal the substance of any potential amendment. Doe also never moved to amend his Complaint.

The district court granted Emory's Motion to Dismiss with prejudice and dismissed all of Doe's claims against the University on the grounds that Doe failed

to state a claim upon which relief could be granted. [DE#25.] This appeal followed.

## IV.    Standard of Review.

The Eleventh Circuit reviews a district court's order granting a motion to dismiss de novo. *See e.g.*, *Samford*, 29 F.4th at 685 (citing *Feldman v. Am. Dawn, Inc.,* 849 F.3d 1333, 1339 (11th Cir. 2017)). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); *see also infra* at 18-20 (discussing the *Samford* framework for reviewing motions to dismiss Title IX claims).

The decision as to whether a dismissal should be with or without leave to amend is reviewed for abuse of discretion. *See, e.g., Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018).

## SUMMARY OF THE ARGUMENT

***The District Court Did Not Err in Dismissing Doe's Title IX Claims.*** *Doe v. Samford University* is this Court's most recent examination of the pleading standard applicable to a Title IX case, and its holding is controlling here. *See Samford*, 29 F.4th 675 (11th Cir. 2022). In *Samford*, this Court found that in order to raise a facially-plausible claim of sex discrimination, a plaintiff must allege facts giving rise to a reasonable inference that the university discriminated against him

"on the basis of sex." *Id.* at 687. "[A]llegations that are 'merely consistent with'
liability 'stop[] short of the line between possibility and plausibility" and thus fail
to state a claim. *Id.* at 688 (second alteration in original) (quoting *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).

Here, the district court properly dismissed Doe's Complaint because its
allegations fail to meet the *Samford* standard. Doe alleges that Emory's Title IX
investigators committed procedural missteps, but Doe's allegations fail to give rise
to a plausible inference that Emory discriminated against Doe on the basis of sex
because his averments are more consistent with "obvious alternative explanations
that suggest lawful conduct," such as inadvertence or pro-complainant bias.
*Samford*, 29 F.4th at 689.  Doe also fails to adequately allege that Emory treats
males differently from similarly-situated females; his allegations do not support an
inference of sex discrimination based on disparate treatment. *See Doe v. Columbia
Coll. Chi.,* 933 F.3d 849, 856 (7th Cir. 2019).

Moreover, Doe's allegations of inconsistencies in Roe's testimony do not
give rise to the type of "grave" doubts over the outcome of the Title IX process
that might produce an inference of sex discrimination. *See Samford*, 29 F.4th at
690 (quoting *Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020)). Doe admits
that the hearing board was aware of alleged inconsistencies in Roe's testimony but

determined that Roe's account was credible after hearing her live witness testimony and that of corroborating witnesses, too. [*See* DE#1:41 (¶ 133).]

As the district court recognized, Doe's allegations of procedural irregularities do not give rise to an inference of discrimination on the basis of sex. And Doe's attempts to buttress his allegations with even further contentions that Emory was biased against men or caved to outside pressure similarly fail to raise a reasonable inference of sex discrimination. A thirty-year-old protest, rescinded administrative guidance, an investigation that did not concern Roe's complaint, programming aimed at reducing sexual assault on campus, and one other lawsuit filed by a male student do not raise a reasonable inference that Emory discriminated against Doe because of sex. *See Samford*, 29 F.4th at 691-92. [DE#1:11-12 (¶ 36); 14-15 (¶ 46); 23-25 (¶¶ 69-73).] *See Samford*, 29 F.4th at 691. Doe's Complaint failed to raise a reasonable inference of sex discrimination.

**_The District Court Did Not Err in Dismissing Doe's Contract Claims._** The district court correctly recognized that Doe failed to allege mutual assent to the SMP, a critical element of contract formation. Mutual assent requires that "[b]oth parties [] assent to the same thing in the same sense, and their minds must meet as to all the terms." *BDI Laguna Holdings v. Marsh*, 301 Ga. App. 656, 663-64 (2009). "In the absence of this meeting of the minds, there is no special contractual

16

provision[] between the alleged contracting parties." *Donaldson v. Olympic Health Spa, Inc.*, 175 Ga. App. 258, 259 (1985).

Doe's allegations of mutual assent are conclusory. Doe fails to allege that he was aware of the existence of the SMP or of any of its terms prior to Emory's investigation of his conduct. And Doe's allegation of "compliance with" Emory's "relevant policies" is also conclusory. [DE#1:59 (¶ 182).]

On appeal, Doe attempts to resuscitate his breach of contract claims by relying on an implied contract theory. But implied contracts also require mutual assent, *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 853 (2017), and Doe's Complaint is bereft of any such factual allegations. Doe's reliance on authorities where allegations of assent were not analyzed or where assent was properly inferred from allegations of the parties' course of conduct cannot save his claims.

The dismissal of Doe's breach of contract claims also must be affirmed for additional reasons. The SMP could not constitute a binding contract between Doe and Emory because Emory was free to modify its terms at will. *See Mun. Elec. Auth. of Ga. v. City of Calhoun*, 227 Ga. App. 571 (1997). [*See* DE#1:42 (¶ 137); DE#15-2:28.] And the dismissal of Doe's so-called claim for "intentional and knowing breach of contract" should also be affirmed for the reason that it is not an independent cause of action under Georgia law. *See Moses v. Auto-Owners Ins. Co.*, No. 1:19-cv-00032 (M.D. Ga. Dec. 2, 2020), Doc. 25 at *6 n.2.

17

***The District Court Did Not Abuse its Discretion in Dismissing Doe's Complaint with Prejudice.*** "It has long been established in this Circuit that a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief." *Davidson v. Maraj*, 609 F. App'x 994, 1002 (11th Cir. 2015). Doe made such a general and cursory request for leave to amend and never proposed the substance of any amendment to the district court. It was not an abuse of discretion to dismiss Doe's Complaint with prejudice.

## ARGUMENT

I. **The District Court Correctly Held that Doe Failed to State a Claim Under Title IX.**

A. ***Samford*** **provides the appropriate framework for applying federal pleading standards to Title IX claims.**

The *Samford* Court applied familiar pleading principles to announce the "appropriate framework" for establishing a Title IX claim. *Samford*, 29 F.4th at 686. Under *Samford*, a court in this Circuit should ask "whether the alleged facts, if true, permit a reasonable inference that the university discriminated against [the plaintiff] on the basis of sex." *Id.* at 687. This test "mirrors the statutory prohibition of adverse action 'on the basis of sex.'" *Id.* at 868 (citing 20 U.S.C. § 1681(a)). And it "incorporates the plausibility standard against which factual allegations must be assessed." *Id.* at 686-87.

18

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 685 (quoting *Iqbal*, 556 U.S. at 678). "'Factual allegations that are ***merely consistent*** with a defendant's liability fall short of being facially plausible.'" *Id.* at 685 (emphasis added) (quoting *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012)). "[W]hen determining whether the complaint crosses 'the line between possibility and plausibility of entitlement to relief,' . . . 'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" *Id.* at 686 (citing *Twombly*, 550 U.S. at 554, 557, and *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)); *see also Samford*, 29 F.4th at 695-96 (Jordan, J., concurring) (agreeing that Supreme Court and Eleventh Circuit precedent hold that allegations that are "merely consistent" with the defendant's liability are insufficient to state a claim).

This standard applies where, as here, a plaintiff asks this Court to infer that Emory's actions were motivated by sex bias. *See Samford*, 29 F.4th 687. But a court cannot draw that inference where the allegations "permit obvious alternative explanations . . . . includ[ing] ineptitude, inexperience, and pro-complainant bias." *Id.* at 689 (quoting *Am. Dental Ass'n*, 605 F.3d at 1290). Accordingly, Doe's assertion that "non-discriminatory explanations for Emory's conduct are of no

19

moment here" is incorrect. (Appellant's Br. at 29 (citing *Columbia Univ.*, 831 F.3d at 48).)

Although *Samford* is the controlling law in this Circuit, Doe cites to a number of authorities outside of this jurisdiction (and, in one case, outside of the context of alleged intentional discrimination) to argue that the district court was required to ignore obvious non-discriminatory explanations for Emory's actions. (*See* Appellant's Br. at 26 (citing, *e.g.*, *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016)).[3] The one district court order on which Doe relies from within the Eleventh Circuit, *Smith v. Healthcare Auth. for Baptist Health*, 2:22-cv-887-MHT, 2022 WL 857036 (M.D. Ala. Mar. 22, 2022)), preceded *Samford* and, regardless, properly recognizes (in the employment discrimination context) that a complaint should be dismissed where the factual allegations in the complaint give rise to "obvious alternative explanation[s]." *Id.* at *3 (quoting *Am. Dental Ass'n*, 605 F.3d at 1290).

### B. The District Court Correctly Applied *Samford* in Dismissing Doe's Title IX Claim.

Applying *Samford*, the district court correctly determined that Doe's allegations did not permit a reasonable inference that Emory discriminated against Doe **on the basis of sex**.

---

[3]    Eleventh Circuit Doc. No. 19-1. All citations to Appellant's Brief are to the page number provided by Appellant at the foot of the page.

The *Samford* plaintiff was a male student who was disciplined after being found by his university's Title IX hearing panel to have engaged in sexual intercourse with a female student whose "ability to consent to intercourse . . . was impaired by alcohol consumption." *Samford*, 29 F.4th at 683-84. As in this case, the *Samford* plaintiff argued that alleged procedural violations, substantive errors, "public pressure [] to comply with Title IX," and "public statements by university officials" combined to give rise to a plausible inference that he was discriminated against on the basis of sex. *Id.* at 687.

This Court affirmed the dismissal of the *Samford* plaintiff's claims, reasoning that "viewed in isolation or collectively, these allegations do not make it plausible that [the plaintiff] was suspended on the basis of sex." *Id.* This Court held that:

- Although the *Samford* plaintiff identified deviations from the university's Title IX policy, "[a] deviation from a Title IX policy is not, in and of itself, a violation of Title IX." *Id.* at 688. The plaintiff's assertions that these deviations resulted from bias were insufficient to overcome "obvious alternative explanations . . . [that] suggest lawful conduct," such as "ineptitude, inexperience, and pro-complainant bias." *Id.* at 689 (quoting *Am. Dental*, 605 F.3d at 1290).

21

- Inconsistences within the complainant's testimony and between her testimony and that of other witnesses did not cast "grave doubt" on the outcome of the process, *id.* at 690 (quoting *Doe v. Oberlin Coll.*, 963 F.3d at 588), where the panel determined that the complainant was credible after hearing her live testimony and that of corroborating witnesses, *id.* at 691.

- The existence of the Dear Colleague Letter did not raise a plausible inference of sex bias given that it "has been rescinded and replaced." *Id.* at 692.

- Public statements by Samford that "the well-being of the complainant is paramount" "at most support a reasonable inference of pro-complainant bias." *Id.* at 691.

- Samford's participation in the "It's on Us" campaign (aimed at engaging men in preventing sexual assault) did not give rise to an inference of anti-male bias. *Id.*

Recognizing the factual similarities between *Samford* and the present case, the district court held that Doe's allegations of procedural and evidentiary irregularities failed to raise a reasonable inference of a Title IX violation. [DE#25:12-17]. Doe's allegations of procedural irregularities by themselves did not give rise to a plausible inference of gender bias, [*id.* at 15-16 (citing *Samford*,

29 F.4th. at 688-89)], and Doe's allegations that the procedural irregularities were the result of gender bias were conclusory, [*id.* at 13-14].

As to Doe's allegations of outside pressure on Emory, the rescinded Dear Colleague Letter similarly did not to give rise to an inference of gender bias, [*id.* at 19 (citing *Samford*, 29 F.4th at 692)], while Doe's other allegations of outside pressure were too remote and too limited to support such an inference, [*id.* at 19-21 (citing *Samford*, 29 F.4th at 687]. And finally, Doe's allegations that some of Emory's sexual assault awareness programs sought to engage men did not give rise to an inference of gender discrimination. [*Id.* at 22-23.] For these reasons, the district court properly held that Doe failed to state a claim for unlawful sex discrimination. [*Id.* at 23.]

### C. Doe's Allegations Do Not Give Rise to a Reasonable Inference of Gender Discrimination.

On appeal, Doe points to five categories of allegations he claims give rise to an inference of sex discrimination. Whether taken alone or marshaled together, the allegations do not give rise to a reasonable inference that Emory discriminated against Doe on the basis of sex. This case is controlled by *Samford,* and Doe's repeated reliance on out-of-circuit cases does not change the outcome of this case.

***Doe's allegations in combination.*** Doe incorrectly argues that the district court failed to consider whether his allegations, *taken together*, raised a reasonable inference of sex discrimination. (*See* Appellant's Br. at 30-31, 37.) The district

court specifically addressed this argument, reasoning that, "[e]ven if the procedural irregularities could state a claim supporting reasonable inference of anti-male bias **when viewed alongside Doe's other allegations**, Doe has failed to include the allegations to support an inference of anti-male bias." [DE#25:17 n.5 (emphasis added) (citing *Doe v. Samford Univ.*, No. 2:21-cv-00871-ACA, *aff'd*, 29 F.4th 675 (11th Cir. 2022)); *see also* DE#25:18-25 (analyzing Doe's allegations of public pressure on the University and the tone and statements of the hearing board chair).]

In arguing that allegations in combination can give rise to a reasonable inference of sex discrimination, Doe principally relies on *University of Arkansas-Fayetteville*, which held that allegations of an outcome "against the substantial weight of the evidence" combined with significant outside pressure stated a claim for sex discrimination. *Fayetteville*, 974 F.3d at 864. But the facts alleged in *Fayetteville* are very different from those asserted by Doe in this case.

In *Fayetteville*, after the Title IX coordinator's initial finding of no misconduct, the complainant engaged in a "media blitz," speaking to "multiple media outlets" and starting a "campus-wide protest" that forced the university to issue a public statement in response. *Id.* This occurred while the university was under active investigation by both OCR and the Arkansas legislature for its handling of sexual assault allegations by females against males, and another female student had filed a "highly publicized" lawsuit against the university alleging that

it had failed to properly adjudicate her claim of sexual assault against a male student athlete. *Id.* at 863. These circumstances led to "'numerous news articles' criticizing the University's handling of sexual assault allegations by females." *Id.*

The *Fayetteville* Title IX coordinator found that the complainant's text messages showed she was not incapacitated from alcohol use while traveling to the plaintiff-respondent's residence and found no evidence that she consumed alcohol at the plaintiff-respondent's residence or consumed a substantial amount of alcohol immediately before traveling there. *Id.* at 864-65. Nevertheless, the hearing panel found, "against the substantial weight of the evidence" that the complainant "became incapacitated at [the plaintiff-respondent's] residence." *Id.* at 864. Also troubling to the Eighth Circuit was that the hearing panel, which typically would have expelled a student in the plaintiff-respondent's position, imposed lesser sanctions because, in its own words, its 2-1 decision turned on "extremely close factual determinations that were very difficult to make," suggesting that outside pressure had influenced the panel's conclusion. *Id.* at 865.

As Judge Jordan's *Samford* concurrence recognizes, the allegations that "the hearing panel's decision was against the weight of the evidence, that lesser sanctions were imposed in order to avoid negative media attention and to portray a stricter approach to sexual assault, and that [the] university was under pressure on

25

multiple fronts to find males responsible for sexual assaults" serve to distinguish *Fayetteville* from *Samford*. *Samford*, 29 F.4th at 701 (Jordan, J., concurring).

Those allegations serve to distinguish *Fayetteville* from the present case as well. Doe does not allege any kind of "media blitz" or other contemporaneous "highly publicized" allegations pressuring Emory. And none of the indicia of an unreliable outcome from *Fayetteville*—such as the hearing panel reaching unsupported conclusions at odds with the investigator and its imposition of lesser sanctions because of "extremely close" and "very difficult" factual determinations—are present in Doe's Complaint.

*Doe v. University of the Sciences*, 961 F.3d 203, 209 (3d Cir. 2020), is similarly distinguishable. There, the decision turned on plaintiff's allegations of public pressure on the university **and** specific allegations that the university investigated alleged violations of university policy by the male plaintiff but failed to investigate alleged violations by three female students. *See Univ. of the Sciences*, 961 F.3d at 210; *see Samford*, 29 F.4th at 701 n.5 (Jordan, J., concurring). Here, Doe does not allege that Emory failed to investigate similarly-situated female students.

The other authorities relied upon by Doe—none of which were decided under *Samford*—are also distinguishable. *See, e.g.*, *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (complainant led a student movement to

compel the college to alter its handling of sexual assault allegations and to expel the plaintiff); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1209 (M.D. Fla. 2019) (pre-*Samford* suit in which allegations of multiple news stories in local and national media, campus meetings, and campus protests were found sufficient to raise an inference of sex discrimination when combined with procedural missteps); *Doe v. Lynn Univ., Inc.*, 235 F. Supp. 3d 1336, 1340 (S.D. Fla. 2017) (pre-*Samford* suit where allegations regarding a recent news report criticizing the failure to discipline a male perpetrator, resulting pressure from parents and the public, and an instruction to administrators to "take a hard line towards male students accused of sexual battery," coupled with procedural missteps, stated a plausible claim for sex discrimination); *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1014 (D. Colo. 2019) (allegations including multiple media pieces criticizing university's "lax" enforcement of Title IX as "fostering a rape culture" and the investigator's failure to punish the complainant for breaking rules provided "at least some relevant information to make the claims plausible on their face").

Thus, whether considered in isolation or in combination, Doe's allegations simply do not raise a reasonable inference of sex discrimination.

### *Doe's allegations that the decision was against the weight of the evidence.*

Doe's argument that the hearing panel's decision was against the weight of the evidence fails. Doe relies upon inconsistencies in Roe's statements as to her level

of intoxication and whether Doe choked Roe with her belt, (*see* Appellant's Br. at 32), but Doe acknowledges that these statements were presented to the hearing panel, [DE#1:39 (¶ 125)]; that Roe's statements regarding her intoxication were supported by multiple other witnesses, [DE#1:41 (¶ 133)]; and that the hearing panel made a determination that Roe was credible after hearing her statements and questioning her. [*Id.*] Doe is arguing credibility, but he does not point to indicia of unreliability, such as a decision at odds with the investigator's report, an unsupported finding, or indications that the hearing panel was uncomfortable with its own credibility determination. *Cf. Fayetteville*, 974 F.3d at 864-65.

If allegations that a panel decision was against the weight of the evidence can ever support an inference of sex discrimination, *see Samford*, 29 F.4th at 690 (questioning this theory), the "degree of doubt" regarding that outcome must not be merely "articulable"; it must be "grave." *Oberlin Coll.*, 963 F.3d at 588.

In *Oberlin College*, the Sixth Circuit found a "grave" degree of doubt over the outcome of the Title IX investigation where the hearing panel made an "arguably inexplicable" determination that the complainant, who was conscious and participated in coherent exchanges, was "incapacitated" as that term was defined in the relevant policy. *Id.* at 588. Here, as in *Samford*, Doe's allegations of testimony from which the panel *might* have reached another result do not give rise to a "grave" degree of doubt. *See Samford*, 29 F.4th at 690-91 (rejecting argument

28

that panel decision was against the weight of evidence where panel heard complainant's testimony and that of corroborating witness and held complainant to be credible despite existence of conflicting testimony).

***Doe's allegations of procedural shortcomings.*** Doe argues that the Complaint's allegations of procedural errors in Emory's Title IX investigation and hearing plausibly demonstrate that Emory discriminated against Doe on the basis of sex. (Appellant's Br. at 33-34.) Most alleged procedural shortcomings that Doe identifies, though, such as a lack of direct cross-examination and alleged lack of complete notice of the charges, are gender neutral and cannot support an inference of sex discrimination. (*See id.*)

Put differently, allegations that are merely consistent with discrimination, but which could have obvious, alternative "lawful explanations" including "ineptitude, inexperience, and pro-complainant bias" are not enough to plausibly allege sex discrimination. *Samford*, 29 F.4th at 689. And "[a] deviation from a Title IX policy is not, in and of itself, a violation of Title IX." *Samford*, 29 F.4th at 688 (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 292 (1998)).

A complaint does not raise a reasonable inference of sex discrimination when it fails to connect alleged procedural deficiencies in a Title IX investigation to a plaintiff's sex. *Id.* at 688-89; *see also, e.g.*, *Columbia Coll.*, 933 F.3d at 856 (alleged restrictions on a respondent's "access to documents relevant to the

29

investigation" did not "demonstrate[ ] an anti-male bias" where "th[e] allegation [was] divorced from [sex]—plaintiff d[id] not allege that females accused of sexual assault were allowed to review materials or that only female victims were allowed to review them"). Here, Doe's allegations of procedural missteps "permit 'obvious alternative explanations' . . . . includ[ing] ineptitude, inexperience, and pro-complainant bias." *Samford*, 29 F.4th at 689.

The same applies to Doe's claims that "prejudicial" statements that he was "the biggest stoner at Emory" and that girls were "scared" of him were reproduced in the investigative report. (Appellant's Br. at 50 [citing DE#1:37, ¶ 118].) Doe faults the district court for disregarding these allegations as "conclusory," *id.*, but the allegations do not give rise to a reasonable inference of sex discrimination because there is no indication that these statements were included in the report "on the basis of sex." *Samford*, 29 F.4th at 681. Moreover, the assertion that the statements were prejudicial *is* conclusory in and of itself.

***Doe's allegations of disparate treatment.*** Doe identifies various occasions on which he argues women received better treatment than men. (*See* Appellant's Br. at 33.) These allegations similarly fail to give rise to a reasonable inference of discrimination on the basis of sex.

Doe's allegations that Roe and her witnesses had access to materials from Roe's complaint against "JA" and that the hearing panel credited Roe and her

female witnesses over Doe and his male witnesses are unpersuasive. The access of Roe and her witnesses to materials from her complaint against JA does not demonstrate anti-male bias because Doe does not (and cannot) allege "that females accused of sexual assault were allowed to review materials or that only female victims were allowed to review them." *Columbia Coll.*, 933 F.3d at 856. The existence of lawful alternative explanations for these circumstances, such as anti-complainant bias, or that Roe, as the complainant against JA, was differently situated than Doe, means that these allegations are insufficient to state a plausible claim for anti-male sex discrimination.

Likewise, Doe cannot rely on the fact that the hearing panel credited the testimony of Roe and two female witnesses that Roe was visibly intoxicated over the testimony of Doe and three male witnesses that she was not. [DE#1:41 (¶ 133)]. This allegation does not give rise to an inference of sex bias any more than an inference of anti-female bias would arise if the panel had credited Doe and his witnesses instead. It is a gender-neutral allegation.

This case is distinguishable from *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), where the hearing panel, without hearing live testimony, overrode the investigator's credibility determinations on the basis that many of the male witnesses were the plaintiff's fraternity brothers. *See Baum*, 903 F.3d at 586. This led to a reasonable inference of gender discrimination because the hearing panel

31

applied inconsistent standards across sexes, crediting the testimony of several female witnesses while ignoring that they were the complainant's sorority sisters. *Id.*; *see Samford*, 29 F.4th at 700 (Jordan, J., concurring). In contrast here, Doe does not allege that the panel's credibility determinations were contrary to those of the investigator, nor that inconsistent standards were applied to the testimony of male and female witnesses.

***Doe's allegations of institutional bias.*** Doe's allegations are insufficient to raise a reasonable inference that the university harbored institutional bias against males. Doe points to general university programming to address "sexual assault awareness" through events like RespectCon in 2013, RealConsent in 2014, and RespectCon19 in 2019. [DE#1:24-25 (¶¶ 70, 71, 73).] Doe alleges that some of these events included a focus on "engaging men in sexual violence prevention," [DE#1:24 (¶ 70)], and one featured a discussion titled "Masculinity as a Failed Project" and a talk from an outside organization, Men Stopping Violence, titled "Definition of Male Sexual Violence Against Women: Implications for Engaging Men on Campus." [*Id.* at 25 (¶ 73).]

But as the district court recognized, these allegations do not raise a reasonable inference of sex discrimination because courts "have found university programming aimed at protecting women does 'little to advance the actual gender discrimination claim at issue.'" [DE#25:22-23 (citing *Univ. of Chicago*, 2017 WL

4163960, at *5).] Even if the topics chosen by third parties could be attributed to Emory, an interest in involving men in combating sexual assault does not equate to an unlawful bias against men. *See Samford*, 29 F.4th at 691 (rejecting arguments that Samford's public statement that "the wellbeing of the complainant is paramount" and endorsement of "It's on Us" initiative gave rise to inference of bias again males).

Doe's allegations fall far short of the express statements of bias that courts found supported plausible claims of sex discrimination in the cases that Doe relies upon. (*See* Appellant's Br. at 35.) For example, in *Doe v. Washington & Lee University*, the university's Title IX officer presented an article written for a "female-focused website" that adopted a gender-based (and highly questionable) definition of sexual assault, positing "that sexual assault occurs whenever a woman has consensual sex with a man and regrets it because she had internal reservations that she did not outwardly express." *Washington & Lee*, 2015 WL 4647996, at *10.

In *Doe v. Purdue University*, a university-sponsored center run by one of the Title IX coordinators involved in the investigation at issue publicized an article titled "Alcohol isn't the cause of campus sexual assault. Men are." *Purdue Univ.*, 928 F.3d 652, 669 (6th Cir. 2019). The Sixth Circuit found that this statement "could be understood to blame men as a class for the problem of campus sexual assault rather than the individuals who commit campus sexual assault." *Id.* Taken

together with numerous procedural issues with the investigation (including a credibility determination based on the complainant's written statement and a false statement in the investigative report that the plaintiff-respondent had admitted the assault), these allegations raised a reasonable inference of sex discrimination.

Unlike in *Washington & Lee* and *Purdue*, no allegation in Doe's Complaint suggests that anyone—much less an official involved in Emory's investigative process—held the viewpoint that men as a class are responsible for sexual assaults or adopted a gender-based view of what constitutes sexual assault.

***Doe's allegations of external pressure.*** Doe maintains that his allegations of outside pressure support a reasonable inference that Emory discriminated against him on the basis of sex. That is not the case. Doe avers that the rescinded April 2011 "Dear Colleague Letter" demonstrates that Emory engaged in bias against males because of "[t]he threat of revocation of federal funds." [DE#1:12 (¶ 37).] Doe further alleges that Emory, like other "colleges, universities, and educational programs" continued "victim-centered practices and policies" after the rescission of the Dear Colleague Letter, which Doe argues constitutes "gender biased enforcement of Title IX." [*Id.* at 18-19 (¶ 57).] *Samford* clearly held that such conclusory allegations are not enough to create a reasonable inference that a university engaged in sex discrimination. *See Samford*, 29 F.4th at 692 ("Doe's allegations about a government policy that has been rescinded and replaced do not

34

assist him in crossing 'the line between possibility and plausibility of entitlement to relief.'") (citing *Twombly*, 550 U.S. at 557)).

Doe attempts to distinguish *Samford* on the basis that the university in that case applied a Title IX policy created after the rescission of the Dear Colleague Letter. (Appellant's Br. at 36 n.7.) But that argument does not refute the district court's conclusion that it is not reasonable to infer that Emory (in applying the version of the SMP in effect when the alleged sexual assault occurred) *was pressured* by guidance that Doe admits was withdrawn. Moreover, even when the Dear Colleague Letter represented the position of the Department of Education, "generalized allegations" about "the 'Dear Colleague' Letter," combined with allegations of procedural impropriety, did not permit a "plausibl[e] infer[ence] that [an] investigation or adjudication was tainted by an anti-male bias." *Columbia Coll.*, 933 F.3d at 855-56.

Similarly, Doe's allegation regarding a protest in 1991, **more than thirty years ago**, over Emory's alleged "lack of action taken regarding the complaints of 13 women against a male professor," [DE#1:23 (¶ 68)], is too remote to support an inference of present-day gender discrimination. *See, e.g.*, *BE & K Const. Co. v. N.L.R.B.*, 133 F.3d 1372, 1376 n.10 (11th Cir. 1997) (holding that employer's twelve-year-old labor violations were "too remote in time" to support inference of anti-union animus).

Doe's Complaint also refers to a single lawsuit from 2018, in which the University was sued for allegedly holding "biased assumptions that female students would not make false accusations of sexual assault against their fellow male students." [DE#1:24-25 (¶ 72).] However, a single, separate lawsuit—which Doe does not allege was covered in the media—does not give rise to an inference of gender bias. Moreover, the district court was under no obligation to take the allegations in the 2018 lawsuit as true.

Doe also faults the district court for failing to address the allegation that Emory "was under a five-year investigation by OCR." (Appellant's Br. at 49.) But Doe's allegations that the OCR investigation actually influenced Emory decision-makers are wholly conclusory. Even if the existence of a (gender-neutral) OCR investigation could establish a reasonable inference of gender bias, Doe admits that the complaints subject to OCR review were those filed *prior* to May 31, 2019. [DE#1:12 (¶ 36).] Roe initiated her Title IX complaint almost six months later—on November 6, 2019. [DE#1:32 (¶ 102).] It is not reasonable to infer that Emory was under pressure from the OCR investigation with respect to Roe's Title IX complaint.

Doe's general allegations of outside pressure, citations to remote events, and averments concerning university programming do not plausibly establish that

36

Emory discriminated against Doe **on the basis of sex**. Accordingly, the district court properly dismissed Doe's Title IX claims with prejudice.

## II. The District Court Did Not Err in Dismissing Doe's Claims for Breach of Contract.

### A. The District Court Correctly Dismissed Doe's Claims for Breach of Contract Because Doe Failed to Allege Mutual Assent to the SMP.

Doe's breach of contract claim fails because he did not allege facts sufficient to indicate his own assent to the SMP. A plaintiff seeking to recover under a contract theory must allege the existence of an enforceable contract. *See, e.g.*, *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019). "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1.

Mutual assent, or a meeting of the minds, "is the first requirement of the law relative to contracts." *Simmons v. McBride*, 228 Ga. App. 752, 753 (1997). "It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense." *Moreno v. Smith*, 299 Ga. 443, 444 (2016) (quoting *Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 250 Ga. 391, 395 (1982)). Assent to the terms of the contract requires that "[b]oth parties [] assent to the same thing in the same sense, and their minds must meet as to all the terms." *BDI Laguna Holdings*, 301

Ga. App. at 663-64. "In the absence of this meeting of the minds, there is no special contractual provision[] between the alleged contracting parties." *Donaldson*, 175 Ga. App. at 259 (affirming directed verdict where there was no evidence that both parties assented to the implied term alleged to have been breached). Because mutual assent is an affirmative element of a claim for breach of contract, it is the plaintiff's burden to plead and prove. *See, e.g.*, *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016) (citing *Jackson v. Easters*, 190 Ga. App. 713, 714 (1989)).

Even where some form of implied contract may exist, the plaintiff must plead (and, ultimately, prove) that the specific term that the plaintiff seeks to rely upon became part of the parties' contract. *See Donaldson*, 175 Ga. App. at 259. Thus, in *Donaldson*, the court held that although the plaintiff proved based on the parties' prior practice the existence of an implied contract under which the defendant, a spa, would limit its clientele to women and to require membership cards for access to the exercise areas, the plaintiff failed to establish that the spa had ever assented to the term that she sought to enforce—an implied promise to prevent any non-member from ever accessing the exercise area. *Id.*

The district court applied these principles of Georgia law to Doe's Complaint and correctly determined that Doe failed to plead mutual assent to the SMP. [*See* DE#25:25-31.] As the court recognized, Doe's breach of contract claim

38

is based entirely on the provisions of the SMP. [DE#25:25.] Indeed, it must be, as Doe fails to identify any other alleged promises by Emory, and reliance on "'[g]eneral policy statements' and 'broad and unspecified procedures and guidelines' will not suffice" to state a claim for relief in even the most plaintiff-friendly jurisdictions. *E.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (dismissing claim for breach of contract).

But Doe's allegations that the SMP formed part of a binding contract with Emory are conclusory. [*See* DE#1:42 (¶ 136) ("Upon Plaintiff's matriculation to Emory, Plaintiff and Emory became mutually bound by the 'Policy 8.2: Sexual Misconduct' document . . . ."); DE#1:59 (¶ 182) ("At all times relevant hereto, a contractual relationship existed between Plaintiff and Emory through . . . Plaintiff's tuition payment and other considerations, such as compliance with the University's relevant policies.").] The district court correctly determined that it could not rely on those allegations so as to find the existence of a binding contract between Doe and Emory. [*See* DE#25:28.] Rather, as the court recognized, "mere enrollment as a student is not sufficient to show mutual assent." [*Id.* (citing *Doe v. Emory Univ.*, No. 1:20-cv-2002-TWT, 2021 WL 358391, at *6 (N.D. Ga. Jan. 22, 2021) ("*Emory (2021)*")).] The district court's holding that Doe failed to properly allege his own assent to the statements in the SMP that he now seeks to enforce as contractual promises is in full accordance with the weight of authority in this

39

Circuit. *See, e.g.*, *Emory (2021)*, 2021 WL 358391, at *6; *Bishop v. Shorter Univ., Inc.*, No. 4:15-cv-0033-HLM, 2015 WL 13753710, at *7 (N.D. Ga. June 4, 2015).

In *Emory (2021)*, the plaintiff alleged that Emory breached an agreement to provide in-person classes in the wake of the COVID-19 pandemic. *See Emory (2021)*, 2021 WL 358391, at *1. The plaintiff attempted to rely on several of Emory's express statements as the basis of her claim for breach of contract, but of these, only one group contained language that might be sufficiently definite to constitute an enforceable promise—course webpages referring to "in-person" instruction. *Id.* at *5-6.

There were, however, "no allegations that Plaintiff . . . was aware of the Defendant's alleged offer for in-person instruction of any classes, that she accepted these offers, or that any class she participated in held itself out as in-person before transitioning to virtual learning. Without these specific allegations, "Plaintiff . . . [did] not sufficiently allege[] facts that indicate[d] her own assent to Emory's alleged offer of in-person instruction." *Id.* at *6. Although the *Emory (2021)* court ultimately found that the plaintiff pleaded an implied promise to provide in-person classes in exchange for tuition payments based on the parties' specifically identifiable prior *conduct* of providing and attending in-person classes, *id.*, that part of *Emory (2021)*'s holding is distinguishable for the reasons discussed below.

In *Bishop*, the plaintiffs were students at a university that they alleged had failed to adequately protect their medical records and personal identifying data. *See Bishop*, 2015 WL 13753710, at *6. The district court held that the plaintiffs failed to plausibly allege an implied-in-fact contract under which the university agreed to protect their information because, among other things, "nowhere in the complaint are the Plaintiffs alleged to have ever logged onto [Defendant's] website and accessed, read, understood, actually relied upon, or otherwise considered [Defendant's] privacy policy." *Id.* at *6 (alterations in original) (quoting *Dyer v. Nw. Airlines Corp.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. Sept. 8, 2004)).

*Emory (2021)* and *Bishop* stand for the proposition that a student who seeks to rely on a particular policy document as part of an agreement between the student and his university (whether express or implied) must plead his assent to the specific terms of the document. *See also Mathews v. Clark Atlanta Univ., Inc.*, No. 1:17-cv-2963-MLB, 2023 WL 2229670, at *15 (N.D. Ga. Jan. 13, 2023) (rejecting student's reliance on various policy documents when student offered "no explanation . . . as to how they form a binding contract between the parties"). Doe's Complaint contains no allegations of his own assent to the SMP.

Doe's allegation of "compliance with the University's relevant policies," [DE#1:59 (¶ 182)], does not identify the SMP or assert knowledge of the document's existence or Doe's assent to its terms. An allegation that an

individual's actions were "in compliance" with certain rules does not establish that the individual actually knew of the rules' existence or assented to them. Moreover, the allegation is wholly conclusory. Doe does not identify any act that he took to comply with the SMP. Nor does Doe point to any promise on his part—that is, any bargained-for consideration—that the SMP in fact contains. *See Rossi v. Univ. of Utah*, 496 P.3d 105, 116 (Utah 2020) (holding that "Research Misconduct Policy" that "read[] as an internal operating manual for resolution of misconduct" and contained "no indication of a legally enforceable, bargained-for exchange" did not give rise to binding contractual relationship).

The district court's straightforward application of established pleading rules to contracts in educational settings—that a student-plaintiff must allege assent to the particular promise on which he or she seeks to rely—has been mirrored in courts around the country. *See, e.g.*, *Rossi*, 496 P.3d at 115-16 (holding that student failed to establish contract claim based on university policy documents because "[n]owhere do[] the document[s] refer to any promise or performance by students in exchange for procedures prescribed by the University"); *Shaw v. Elon Univ.,* 400 F. Supp. 3d 360, 366-67 (M.D.N.C. 2019) (dismissing claim for breach of contract where "[e]ven if there were some implied contractual relationship between Plaintiff and Elon, Plaintiff has not alleged that the implied contractual relationship incorporated Elon's undertakings set forth in the Student Handbook");

42

*Manago v. D.C.*, 934 A.2d 925, 927 (D.C. 2007) (affirming dismissal where student-plaintiff "fail[ed] to allege sufficient facts to demonstrate either the terms of the contract or reason to think it was breached").

On appeal, Doe continues to rely on authorities holding that the relationship between students and private universities is generally contractual in nature. (*See* Appellant's Br. at 39-40.) But these opinions do not address what facts supported the conclusion that a particular policy document imposed binding contractual obligations on the parties. *See Morehouse Coll., Inc. v. McGaha*, 277 Ga. App. 529, 529 (2005) (addressing appropriate measure of damages after trial); *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 370 (2008) (affirming summary judgment for Emory on the basis that it followed hearing procedures in its student handbook). Indeed, Doe's cases say nothing about the words or conduct that a student must allege so as to manifest the assent necessary to establish that a particular policy bound a university and its student in a contractual relationship.

Now, though, Doe argues that the district court should have rewritten his Complaint to find a claim based on an implied agreement. But this argument misses the point. "Among the cardinal principles of our Anglo-American system of justice is the notion that the legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded *sua sponte* by a trial judge." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th

Cir. 1998) (holding that trial court erred in reading equal protection claim into plaintiff's complaint), *overruled on other grounds by Iqbal*, 556 U.S. 662.

A plaintiff must allege mutual assent whether he or she seeks to rely on an express or an implied contract, *Grange Mut. Cas. Co.*, 300 Ga. at 853, so the district court's reasoning applies whether or not it invoked the "implied contract" label. It is disingenuous for Doe now to fault the district court for failing to find an "implied contract" where Doe's response to the motion to dismiss did not use that term and Doe's Complaint included only a single, non-specific reference to "implied agreements." (*See* Appellant's Br. at 2, 23, 42.) [DE#1:4 (¶ 9).] Doe's sole response in the district court to Emory's argument that he failed to allege his assent to the SMP was the conclusory statement that "[t]he parties mutually assented to the terms of the sexual misconduct policy (Policy 8.2)." [DE#20:29.]

In support of his argument that he adequately alleged an implied contract, Doe relies on *Williams v. Corporation of Mercer University*, 542 F. Supp. 3d 1366, 1376 (M.D. Ga. 2021), and *Emory (2021)*. But these cases are inapposite. Both *Williams* and *Emory (2021)* held that plaintiffs sufficiently alleged—by relying on the parties' prior course of dealings—an implied contractual agreement that the universities would provide in-person classes in exchange for tuition payments. *See Emory (2021)*, 2021 WL 358391, at *1, *5-6; *Williams*, 542 F. Supp. 3d at 1370-71, 1377.

44

In *Williams*, "the Parties' previous course of dealings of providing on-campus services and facilities in exchange the payment of tuition and fees could plausibly give rise to an implied contract under Georgia law." *Williams*, 542 F. Supp. 3d 1366, 1377 (M.D. Ga. 2021). Likewise, in *Emory (2021)*, the plaintiff's allegation of her assent to defendant's "usual and customary practice of providing on-campus courses" supported the alleged implied contract. *Emory (2021)*, 2021 WL 358391, at *5-6. By critical contrast, Doe's Complaint is devoid of **any** allegations that he had any involvement in or knowledge of a course of conduct by Emory regarding the SMP.[4]

Doe also relies on *Doe v. Emory Univ., Inc.*, No. 1:21-cv-4859-TWT, 2022 WL 17419555, at *8 (N.D. Ga. Dec. 5, 2022) ("*Emory (2022)*"). But that case is also distinguishable. There, the plaintiff purported to allege "explicit promise[s] . . . both verbally and in written communications" by University personnel that those personnel and Emory would comply with Title IX, which the SMP implements. *See* Am. Complaint, *Doe v. Emory Univ., Inc.*, No. 1:21-cv-4859-TWT (Doc. 13 Apr. 1, 2022), 2022 WL 4289388 ¶ 439; *see also id.* ¶¶ 230, 257, 323, 326

---

[4]     *Pinder v. John Marshall Law School*, in which the court held that students had an implied "contract-related right" to non-discriminatory grading in a former professor's retaliation action, similarly does not concern when or how a policy document forms an implied contract between a student and a university. *See Pinder*, 11 F. Supp. 3d 1208, 1266 (N.D. Ga. 2014).

(alleging other explicit promises by University personnel).[5]  No such allegations are found anywhere in Doe's Complaint.

Here, the district court correctly concluded that Doe did not allege his assent to the SMP—a critical element of contract formation. Accordingly, the dismissal with prejudice of Doe's claim for breach of contract must be affirmed.

### B. The Dismissal of Doe's Contract Claims Should Also Be Affirmed Because Emory Could Modify the SMP at Will.

Although the district court did not rule on Emory's alternative argument that the SMP cannot constitute a binding contract because it is subject to unilateral modification, this Court "may affirm [a district court's] judgment on any ground that finds support in the record." *Cox v. Nobles*, 15 F.4th 1350, 1360 n.11 (11th Cir. 2021) (alteration in original) (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001)).

A document is not enforceable as a contract if one party may amend it at will. "[W]here a party offers an illusory promise, a court will find inadequate consideration and deem the contract unenforceable." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). "An illusory promise exists when 'words of

---

[5]      The relevant holding from *Emory (2022)* relies solely on two opinions in which the respective courts did not address what allegations of mutual assent are necessary to plead the existence of a contract. *See McGaha*, 277 Ga. App. at 529; *Rollins Coll.*, 352 F. Supp. 3d at 1212 (applying Florida law and not addressing assent).

promise . . . by their terms make performance entirely optional with the "promisor" whatever may happen . . . .'" *Id.* (quoting *Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc.*, 215 Ga. App. 194, 198 (1994)). "[I]f any term of the contract is amendable at the will of [one party], the entire contract would be void for vagueness because there could be no assent of the parties to the terms of the contract." *Mun. Elec. Auth. of Ga. v. City of Calhoun*, 227 Ga. App. 571 (1997).

Here, Doe admits that Emory may unilaterally modify the SMP. [*See* DE#1:42 (¶ 137) (admitting that the SMP "is updated and/or revised each new school year").] And the SMP itself demonstrates that it was modified by Emory no less than seventeen times between March 2007 and February 2020. [DE#15-2:28.]

"Under the doctrine of incorporation by reference, [the court] may . . . consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (quoting *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018)). That is the case here: Emory attached the SMP to its Motion to Dismiss, [*see* DE#15-2:16-28], the SMP is central to Doe's contract claims, and Doe does not dispute the SMP's authenticity. [*See* DE#20:29 n.4 (raising no authenticity objection).]

As other courts have recognized, the principle that a document subject to unilateral modification does not create a binding contract applies with equal force

to universities and their students. *See, e.g.*, *Washington & Lee*, 2015 WL 4647996, at *11 ("Courts applying Virginia law routinely reject the notion that a 'Student Handbook' creates a mutuality of engagement where the terms of the handbook are subject to change.") (collecting cases); *Millien v. Colby Coll.*, 874 A.2d 397, 402 (Me. 2005) (Maine law). Because Doe's Complaint and the documents incorporated by reference demonstrate that Emory could and did unilaterally amend the SMP, it cannot constitute a binding contract between Emory and Doe, and Doe's contract claims fail.

### C. The District Court's Dismissal of Doe's Claim for "Intentional and Knowing Breach of Contract" Should Be Affirmed on the Alternative Ground that This Is Not a Separate Cause of Action.

As Emory argued below, "intentional and knowing breach of contract" is not a separate cause of action under Georgia law. [DE#15-1:25-26.] Although the district court dismissed the count because Doe failed to allege mutual assent, it recognized that "[o]ften, this statute is viewed as an exception to the rule against remote damages, rather than as an independent cause of action." [DE#25:30 n.8 (citing *Blue Ridge Mountain Fisheries, Inc. v. Dep't of Nat. Res.*, 217 Ga. App. 89, 94 (1995)).]

Doe's claim for intentional and knowing breach of contract is based on O.C.G.A. § 51-12-10. [*See* DE#1:59.] In full, that Code section provides:

> When a tort is committed, a contract is broken, or a duty
> is omitted with knowledge and for the purpose of

48

> depriving the plaintiff of certain contemplated benefits,
> the remote damages occasioned thereby become a proper
> subject for the consideration of the jury.

O.C.G.A. § 51-12-10. Courts recognize that this provision creates an "exception to

the [usual] rule against recovery of remote damages." *Blue Ridge Mtn. Fisheries*,

217 Ga. App. at 94. It "do[es] not create duties or constitute [a] cause[] of action."

*Moses v. Auto-Owners Ins. Co.*, No. 1:19-cv-00032 (M.D. Ga. Dec. 2, 2020), Doc.

25 at *6 n.2 (dismissing claim under O.C.G.A. § 51-12-10). Accordingly, the

dismissal of Doe's claim for "intentional and knowing" breach of contract must be

affirmed.

## III.    The District Court Did Not Err in Dismissing Doe's Complaint with Prejudice.

The district court correctly dismissed Doe's Complaint with prejudice

because Doe never properly moved to amend his Complaint. "[T]his Court has

clearly held that '[w]here a request for leave to file an amended complaint simply

is imbedded within an opposition memorandum, the issue has not been raised

properly.'" *Cita Tr. Co.*, 879 F.3d at 1157 (second alteration in original) (quoting

*Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *accord Posner*, 178 F.3d

at 1222. Instead, "[f]iling a motion is the proper method to request leave to amend

a complaint" and the motion "should either set forth the substance of the proposed

amendment or attach a copy of the proposed amendment." *Id.* (quoting *Long v.*

*Satz*, 181 F.3d 1275, 1279 (1999)). Accordingly, "i[t] has long been established in

this Circuit that a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief." *Davidson*, 609 F. App'x at 1002 (citing *Rosenberg*, 554 F.3d at 967; *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc); and *Posner*, 178 F.3d at 1222). This rule applies regardless of whether the complaint at issue is the plaintiff's first pleading. *See, e.g.*, *Posner*, 178 F.3d at 1222; *Cita Tr. Co.*, 879 F.3d at 1152.

In *Cita Trust Co.*, the plaintiff "did not file a motion requesting leave to amend, and did not set forth the substance of the proposed amendment or attach a copy of it." 879 F.3d at 1157. "All [the plaintiff] did was, in the conclusion of its response in opposition to [the] motion to dismiss the complaint, alternatively request dismissal without prejudice so that it *could amend* the complaint." *Id.* This Court determined that the plaintiff "thus failed to properly move for leave to amend, and the district court soundly rejected the infirm request." *Id.*

Here, Doe attempted the same type of alternative request to amend that was expressly rejected by this Court in *Cita Trust Co.* Doe made only a general and cursory request for leave to amend imbedded in his response to Emory's Motion to Dismiss:

> Plaintiff respectfully submits the Complaint is sufficient on its face to state claims for violation of Title IX and breach of contract against Emory. To the extent this Honorable Court determines otherwise, however, any

> dismissal of claims should be without prejudice, and
> Plaintiff should be given an opportunity to file a motion
> for leave to amend, with a proposed amended pleading.

[DE#20:12; *see also id.* at 25 (repeating request).] Doe, who was represented by counsel, did not file a motion to amend, attach a proposed amendment, or even set forth the substance of his proposed amendment. On these facts, *Cita Trust Co.* and *Posner* are controlling and dispositive; the district court did not err in dismissing Doe's Complaint with prejudice.

Doe attempts to circumvent this binding Eleventh Circuit precedent with misleading citations to inapplicable authority, none of which overcomes this Court's clear rule. Moreover, Doe is mistaken that *Wagner* overruled *Posner* and wrong to imply that *Wagner* stands for the proposition that it is improper to dismiss a case without granting leave to amend where plaintiff fails to submit a proposed pleading or otherwise inform the court of the proposed amendment. (*See* Appellant's Br. at 49.)[6]

Moreover, *Wagner* is not inconsistent with *Posner*. *Wagner* rejected a prior holding that allowed all plaintiffs an opportunity to replead and "announced the

---

[6]     *Posner*, a published case that preceded *Wagner*, was and is binding precedent. Under this Court's prior panel rule, "[w]ithout a clearly contrary opinion of the Supreme Court or of this court sitting en banc, [an Eleventh Circuit panel] cannot overrule a decision of a prior panel of this court . . . ." *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003) (emphasis in original) (quoting *N.L.R.B. v. Datapoint Corp.*, 642 F.2d 123, 129 (5th Cir. Unit A Apr. 1981)).

following rule: A district court is not required to grant a plaintiff leave to amend

his complaint sua sponte when the plaintiff, who is represented by counsel, never

filed a motion to amend nor requested leave to amend before the district court."

*Wagner*, 314 F.3d at 542. Nothing in *Wagner* purported to *expand* the

circumstances in which a represented plaintiff is entitled to amend his complaint or

suggested that a motion to amend or request for leave to do so must be granted. *Id.*

In *Posner*, like here, "plaintiffs never filed a motion for leave to amend."

178 F.3d at 1222. "Instead, in one of their memoranda to the district court, they

wrote: 'If necessary, plaintiffs respectfully request that the Court provide them

with an opportunity to file an amended complaint.'" *Id.* In finding that the district

court did not err by denying Plaintiffs leave to amend their complaint, this Court

noted:

> The Federal Rules require that any "application to the
> court for an order shall be by motion which . . . shall be
> made in writing, shall state with particularity the grounds
> therefor, and shall set forth the relief or order sought."
> Fed. R. Civ. P. 7(b). Where a request for leave to file an
> amended complaint simply is imbedded within an
> opposition memorandum, the issue has not been raised
> properly. Moreover, Plaintiffs did not set out new factual
> allegations in their memorandum that, if added to the
> complaint, would have been sufficient to confer
> jurisdiction.

*Posner*, 178 F.3d at 1222 (citation omitted). This holding is consistent with this Court's long line of decisions through *Cita Trust Co.*, which was decided nineteen years after *Posner*.

The compatibility of *Wagner* and *Posner* is further confirmed by the fact that this Court has repeatedly cited both cases together in affirming dismissals with prejudice—without leave to amend—in situations just like this one. *See, e.g.*, *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 814 (11th Cir. 2014); *Malivuk v. Ameripark, LLC*, 694 F. App'x 705, 710 (11th Cir. 2017); *Davidson*, 609 F. App'x at 1002. Further, contrary to Doe's characterization of *Posner* as presenting an isolated line of authority, multiple other decisions of this Court hold that a failure to file a motion for leave to amend that describes the substance of the amendment or attaches a proposed amended complaint "foreclose[s]" an appellant's argument that the district court erred in dismissing with prejudice. *See, e.g.*, *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1332 n.17 (11th Cir. 2019); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).

*Wagner* is not the only case that Doe misreads. Doe quotes repeatedly from *Woldeab v. Dekalb County Board of Education*, 885 F.3d 1289 (11th Cir. 2018), but fails to acknowledge that *Woldeab* concerned a *pro se* litigant. *Id.* at 1291. The *Woldeab* decision turned upon the fact that *Wagner* changed the prior rule "[only]

53

as to counseled plaintiffs" and "decid[ed] 'nothing about a party proceeding *pro se*.'" *Woldeab*, 885 F.3d at 1291 (quoting *Wagner*, 314 F.3d at 542 & n.1). Thus, *Woldeab* is inapplicable here. *See also Rivas v. Bank of New York Mellon*, 676 F. App'x 926, 928 (11th Cir. 2017) (holding that *pro se* plaintiff was entitled to amend complaint).

Doe's remaining Eleventh Circuit cases are not controlling. *See Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (pre-*Wagner* case in which "the plaintiff moved to vacate the order of dismissal and also requested leave to amend the complaint . . . attach[ing] a proposed amendment"); *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (pre-*Wagner* case); *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 582 (11th Cir. 2020) (holding that district court abused its discretion in determining that amendment would be futile).[7]

Doe also attempts to distinguish *Posner*, *Cita Tr. Co.*, and their ilk on the basis that "in those cases, the plaintiffs either passively referenced a potential amendment or directly sought leave to amend within their briefs, whereas Plaintiff here requested *leave to file a motion to amend* with a proposed amended pleading."

---

[7]    Doe also relies on authorities in which district courts exercised their discretion to allow plaintiffs to file amended complaints. (*See* Appellant's Br. at 50-51 (citing cases).) These cases—even if correctly decided—do not support the conclusion that a district court abuses its discretion when it dismisses a complaint with prejudice in the face of an inadequate request to amend.

54

(Appellant's Br. at 49 (emphasis in original).) This, though, is a linguistic distinction without a difference. Doe failed to file a motion, present the court with a proposed amended complaint, or otherwise inform the court of the new allegations he wanted to assert. Accordingly, the court properly dismissed Doe's Complaint without leave to amend.

## **CONCLUSION**

For the foregoing reasons, Appellee Emory University respectfully requests that this Court affirm the decision of the district court dismissing Doe's Complaint in its entirety with prejudice.

This 31st day of March, 2023.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

s/ Joshua I. Bosin
Joshua I. Bosin
John M. Hamrick
MacKenzie Gansert
Nicholas R. Boyd

Regions Plaza, Suite 1800
1180 West Peachtree Street
Atlanta, Georgia 30309
Telephone:  (404) 817-8500
Facsimile:  (404) 881-0470
E-Mail:  joshua.bosin@hklaw.com
E-Mail:  john.hamrick@hklaw.com
E-Mail:  mackenzie.gansert@hklaw.com
E-Mail: nicholas.boyd@hklaw.com

Counsel for Defendant-Appellee
Emory University

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT**

This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,716 words.

This document complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

This 31st day of March, 2023.

s/ Joshua I. Bosin
Counsel for Defendant-Appellee
Emory University

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the within and

foregoing **RESPONSE BRIEF OF DEFENDANT-APPELLEE EMORY**

**UNIVERSITY** with the Clerk of the United States Court of Appeals for the

Eleventh Circuit using the CM/ECF system, which will cause it to be served upon

Plaintiff-Appellant through its counsel:

> Andrew Y. Coffman, Esq.
> Parks Chesin & Walbert, P.C.
> 75 14th Street, 26th Floor
> Atlanta, Georgia 30309
> E-Mail:  acoffman@pcwlawfirm.com
>
> Stuart Bernstein, Esq.
> Adrienne Levy, Esq.
> Andrew T. Miltenberg, Esq
> Nesenoff & Miltenberg, LLP
> 363 7th Avenue
> New York, New York 10013
> E-Mail:  sbernstein@nmllplaw.com
> E-Mail:  nlewis@nmllplaw.com
> E-Mail:  amiltenberg@nmllplaw.com

This 31st day of March, 2023.

> s/ Joshua I. Bosin
> Joshua I. Bosin